JOAN M. CHIPSER (SBN83192)
1 Green Hills Court
Millbrae, CA 94030
Telephone: (650) 697-1564
FAX: (650) 873-2858
email: joanchipser@sbcglobal.net

Attorney for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

DRAKE ALHAMBRA, LLC,

        Debtor.

)
)
)
)
)
)
)
)
)
)
)

Case No.: 12-40101
(Chapter 11)

**PLAN OF REORGANIZATION DATED JANUARY 9, 2013**

## INTRODUCTION

       This Plan of Reorganization (the "Plan") provides for the restructuring of the debts of DRAKE ALHAMBRA, LLC (referred to herein as "Debtor"). If confirmed, the Plan will bind all creditors provided for in the Plan, whether or not they file a proof of claim or accept the Plan, and whether or not their claims are allowed. All creditors should refer to Parts 1 – 5 of the Plan for information regarding the precise treatment of their claims. A disclosure statement that provides additional information is being circulated with the Plan. The disclosure statement is descriptive and explanatory only; the language used in the Plan is binding. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.**

## **PART 1: SECURED CREDITORS**

**Class 1. Pay Amount Due in Full over Time.**

| Name of Creditor | Value & Description of Collateral | Secured Claim §506(a) | Interest Rate | Term | Monthly Payment |
|---|---|---|---|---|---|
| Bank of America | Assessor's Parcel No. 658170001-4- 4.14 unimproved acres; Assessor's Parcel No. 658170002-5 - 5.89 acres with house commonly known as 77500 Avenida Fernando, La Quinta, CA - $2,433,000 | $908,612 | 2% Fixed - Years 1-7 interest only<br><br>3% Fixed- Years 8-17 amortized over 30 years due in 2029 | Remaining term as per loan documents – 17 years | $1,514 – Years 1-7 $3,831 - Years 8-17<br><br>Balance remaining to be paid in full in January 2029 |

The creditors in this class shall retain its lien until the claim is paid full. The creditor in this class may not possess or dispose of its collateral so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 9. This class is impaired and is entitled to vote on confirmation of the Plan. For instructions re voting see the Disclosure Statement.

**Class 2. Creditor's Rights Remain Unchanged.**

| Name of Creditor | Description of Collateral |
|---|---|
| JP Morgan Chase Bank | 3141 College Avenue, Berkeley, CA |
|  |  |

This creditor's legal, equitable, and contractual rights remain unchanged with respect to the above collateral. The confirmation order will constitute an order for relief from stay. The creditor in this class shall retain its interest in the collateral until paid in full. This secured claim is not impaired and is not entitled to vote on confirmation of the Plan.

## Part 2: GENERAL UNSECURED CREDITORS

**Class 3. General Unsecured Claims, Except Insiders**. Every general unsecured creditor (including claims from rejected executory contracts and excluding claims of insiders) shall be paid 100% percent of their allowed claim in approximately 120 equal monthly installments of $1,142. Payments will be due on the 15th day of the month starting the first full month after the Effective Date of the Plan.

| Name of Creditor | Amount of Claim | Is Claim Disputed? | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| Benito Meza | $137,000 | No | 100% | $1,142 |

Creditors in this class 3 may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 9. This class is impaired and is entitled to vote on confirmation of the Plan. For instructions re voting and objections to confirmation see the Disclosure Statement.

**Class 4. General Unsecured Claims of Insiders**. The following claims shall remain an obligation of the Debtor post-confirmation, but shall receive nothing under the Plan:

| Name of Creditor | Amount of Claim | Is Claim Disputed? |
|---|---|---|
| Steve Davis Single Family Homes Trust | $1,200,000 | No |
| Peter Palmer | $417,862 | No |
| **Total Claims** | **$1,617,862** | |

Creditors in this Class 4 may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 9. These classes are impaired and are entitled to vote on confirmation of the Plan. For instructions re voting and objections to confirmation see the Disclosure Statement.

**Class 5. Interests of Debtor's Members.** The Debtor's members shall retain their interests with their legal and equitable rights unaltered by the Plan. This class is not impaired and not entitled to vote on confirmation of the Plan.

## PART 3: PRIORITY CLAIMS AND EXPENSES OF ADMINISTRATION

(a) **Professional Fees**. Professional fees may be paid only upon application and approval by the Bankruptcy Court. Holders of administrative claims for unpaid professional fees are not entitled to vote on confirmation of the Plan.

The Professional shall deduct the amount of any approved fees and costs from any retainer held by such Professional. To the extent such retainer is insufficient to pay such fees and costs in full, the Debtor shall pay the remaining professional fees and costs in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Joan M. Chipser | $11,000 |

(b) **Other Administrative Claims**. Debtor will pay other claims entitled to priority under section 503(b) in full on the Effective Date. Ordinary course of business payments will be made when due. Holders of administrative claims are not entitled to vote on confirmation of the Plan.

| Name of Creditor (Other Than Ordinary Course) | Estimated Amount of Claim |
|---|---|
| None | |

(c) **Tax Claims**. Debtor will pay claims entitled to priority under section 507(a) (8) in full over time with interest in equal amortizing payments. Such payments will be made monthly, due on the 15th day of the month starting the first full month after the Effective Date of the Plan. Holders of priority tax claims are not entitled to vote on confirmation of the Plan.

| Name of Creditor | Estimated Amount of Claim | Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| None | | | | |

(d) **Tenant Deposit Claims**. Debtor proposes to pay allowed claims entitled to priority under section 507(a)(7) in full on the Effective Date of the Plan, or when due, whichever is later.

| Name of Creditor | Amount of Claim | Amount with Priority |
|---|---|---|
| Amita Nguyen | $3,400 | $3,400 |
| Chris Fegalini | 2,000 | 2,000 |
| Jessica Gibson | 3,000 | 3,000 |
| Kirsten Coleman | 2,500 | 2,500 |
| Melissa Ramos | 1,500 | 1,500 |
| Pia Dietze | 2,000 | 2,000 |
| Riley Jones | 2,000 | 2,000 |

Administrative and Priority creditors may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 9.

## PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) **Executory Contracts/Leases Assumed**. The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan and shall perform all obligations thereunder, both pre-confirmation and post-confirmation. Any pre-confirmation arrearage will be paid on the Effective Date, unless the parties agree otherwise, or the court finds that a proposed payment schedule provides adequate assurance of future performance. Post-confirmation obligations will be paid as they come due.

| Name of Lessor/Counterparty | Property Address or Description | Lease/Contract Arrears as of Effective Date |
|---|---|---|
| None | | |

(b) **Executory Contracts/Leases Rejected**. The Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in property securing these executory contracts and/or unexpired leases. The Debtor waives the protection of the automatic stay and allows the affected creditor to obtain possession and dispose of its collateral, without further order of the court. Upon the date of the entry of the order confirming this Plan, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed or listed in paragraph (a) above. A proof of claim arising from the rejection of an executory contact or unexpired lease must be filed not later than sixty (60) days after the date of the order confirming this Plan. Claims arising from rejection of executory contracts shall be included in Class 2(b) (general unsecured claims).

| Name of Lessor/Counterparty | Property Address or Description |
|---|---|
| None | |

## PART 5: DISPUTED CLAIMS

(a) **Distribution on Allowed Claims**. Debtor will make distributions only on account of undisputed claims. If a creditor has filed a proof of claim, that claim is considered disputed only if a party-in-interest has filed an objection to the claim. If a party has not filed a proof of claim, but its claim is listed in Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated, such claim is considered disputed only if a party-in-interest has filed an objection to the claim. Listing a claim as disputed in the Plan, without filing an objection to the claim, does not make the claim a disputed claim. The Debtor will file objections to disputed claims on or before 60 days from the Effective Date of the Plan.

(b) **Delayed Distribution on Disputed Claims**. Debtor will make no distribution on account of a claim to which an objection has been filed by a party-in-interest, until such claim is allowed by a final order. Instead, Debtor will establish and hold an appropriate reserve pending determination of the disputed claims, and will pay the appropriate amount to claimant once the dispute is resolved.

(c) **Unclaimed Distributions**. If any amount distributed under the Plan on account of claims treated under the Plan is returned or remains unclaimed for 180 days after it is distributed (including any checks that remain uncashed after 180 days from the date thereof), the corresponding claims will be deemed abandoned and the funds distributed as provided in Paragraph 5(a) above.

## PART 6: CLAIMS AND LAWSUITS RESERVED

(a) Debtor retains, and may seek to enforce, the following claims against parties who are or were creditors of the bankruptcy estate, or officers, agents, and other parties related to creditors of the estate.

| Party | Nature of Action |
|---|---|
| Bank of America | Claims and Causes of action relating to Loan No. Ending 2506 – Debtor will release all such claims in exchange for the Class 1 Secured Creditor's acceptance of the Plan |

(b) Debtor retains, and may seek to enforce, all claims against parties other than creditors of the estate, or officers, agents, or other parties related to creditors of the estate.

## **PART 7: MEANS OF EXECUTION**

The Debtor shall make the payments under the Plan to creditors from its monthly net rental income from its 10 unit apartment building located at 3141 College Avenue, Berkeley, CA after payment of debt service on its this property, insurance, maintenance and repair costs, and a reserve for real property taxes. The Steve Davis Single Family Home Trust, an affiliate of the Debtor, will lend the Debtor the amount of any shortfall in funds each month for the duration of the Plan if such income is not enough to pay all operating expenses and Plan payments.

## **PART 8: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a) **Discharge**. Confirmation of the Plan discharges Debtor from all debts provided for in the Plan, whether or not the creditor files a proof of claim, whether or not the creditor accepts the Plan, and whether or not the creditor's claim is allowed, except as provided in section 1141 of the Bankruptcy Code.

(b) **Vesting of Property**. On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 10(f) below, provided that the vesting of said property will be without prejudice and will not act as a bar to a post-confirmation motion to convert this case to one under Chapter 7 by any party-in-interest on any appropriate grounds. The granting of such motion will revest all of the Debtor's property not already administered into the Chapter 7 estate.

(c) **Plan Creates New Obligations**. Except as provided in Part 10, paragraph (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan,

create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

## PART 9: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN

(a) **Automatic Stay Vacated**: The automatic stay of section 362(a) of the Bankruptcy Code terminates as of the Effective Date of the Plan.

(b) **Creditor Action Restrained**. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, notwithstanding paragraph (a) above, a creditor may not take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in Material Default under the Plan, as defined in paragraph (c) below.

(c) **Material Default Defined**. If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 10 calendar days after the time specified in the Plan for such payment or other performance, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 20 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court an extension of time to cure the default, or a determination that no default occurred, then Debtor is in Material Default under the Plan.

(d) **Remedies Upon Material Default**. Upon Material Default, an affected creditor and/or the U.S. Trustee may:

(i) Take any actions permitted under applicable non-Bankruptcy law to enforce the obligation due the affected creditor under the Plan, and may accelerate the time for performance of all payments and other performance due to the creditor over the course of the Plan and not yet performed at the time of the Material Default; or

(ii) File and serve a motion to convert the case to one under Chapter 7.

(e) **Claim not Affected by Plan**. Upon confirmation of the Plan, any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) **Effect of Conversion to Chapter 7**. If the case is at any time converted to one under Chapter 7:

(i) All property of the Debtor as of the date of conversion, whether acquired pre-confirmation or post-confirmation, shall vest in the Chapter 7 bankruptcy estate; and

(ii) All creditors, whether their claims arose pre-confirmation or post-confirmation, are prohibited from taking action against the Chapter 7 bankruptcy estate or property of the estate by section 362 of the Bankruptcy Code.

(g) **Retention of Jurisdiction**. This court shall retain jurisdiction over proceedings: (i) to determine whether Debtor has defaulted in performance of any Plan obligation;

(ii) to determine whether the time for performing any Plan obligation should be extended; (iii) to determine whether the case should be converted to one under Chapter 7 (and proceedings following any such conversion); (iv) to determine whether Debtor is in Material Default; (v) for any enforcement action permitted under paragraph (d)(i) of Part 9 above; and (vi) for any other necessary purposes.

## PART 10: GENERAL PROVISIONS

(a) **Effective Date of Plan**. The Effective Date of the Plan is the eleventh business day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, the Plan proponent may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first business day after that

date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) **Cramdown**. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors.

(c) **Severability**. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(d) **Binding Effect**. The rights and obligations of any entity named or referred to in the Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

(e) **Captions**. The headings contained in the Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

(f) **Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

(g) **Disbursing Agent**. The Debtor shall act as the disbursing agent under the Plan and shall distribute all property or monies to be disbursed under the Plan.

(h) **U.S. Trustee Fees and Reports**. Commencing on the twentieth day of the month after the first calendar quarter following the Effective Date and each on succeeding January 20, April 20, July 20 and October 20 and continuing until the entry of a final decree, or an order converting or dismissing the case, the Debtor shall pay U. S. Trustee fees and file and serve a *Quarterly Post Confirmation Report of Revested Debtor,* in the form prescribed by the United States Trustee, who shall have the right to move to convert or dismiss the case if the fees are not paid and/or the reports are not filed and served timely.

(i) **Post-Confirmation Activities**. Subsequent to the Effective Date of this Plan, the Debtor may operate its business (if any) free of any restrictions of the Bankruptcy Code or the Bankruptcy Court. Moreover, the Debtor shall have the authority to purchase, sell or lease property, to

borrow money on a secured or unsecured basis, compromise controversies, and employ and pay accountants, attorneys and other professionals without order of the court.

(j) **Internal Revenue Code Section 108**.  It is the express purpose of this Plan to conform to the provisions of and to qualify under subsections (a)(1)(A) and (d)(2) of section 108 of the Internal Revenue Code as a "discharge of indebtedness" pursuant to "a plan approved by the court" in a Title 11 case.

 (k) **Notices**. Any notice to the Debtor shall be in writing and mailed, and will be deemed to have been given three days after the date sent by first class mail, postage prepaid and addressed as follows:

> Drake Alhambra, LLC
> 206 Hollister Avenue
> Capitola, CA 95010

> With Copy to:

> Joan M. Chipser
> Attorney-at-Law
> 1 Green Hills Court
> Millbrae, CA 94030

(l)  Stipulation.  The Stipulation Resolving Secured Creditors' Objections and Providing Release of All Claims Against Secured Creditor [Docket No. 72] is incorporated herein and made a part of this Plan by this reference.

Dated:  January 9, 2013

DRAKE ALHAMBRA, LLC


/s/ Steve Davis
Chapter 11 Responsible Individual




/s/ Joan M. Chipser
Attorney for Debtor

Richard J. Bauer, Jr., Esq. SBN 147314
Mark T. Domeyer, Esq. SBN 135008
L. Bryant Jaquez, Esq. SBN 252125
MILES, BAUER, BERGSTROM & WINTERS, LLP
1231 E. Dyer Road, Suite 100
Santa Ana, CA 92705
(714) 481-9100 / FAX (714) 481-9144
File No. 12-01483

Attorneys for Secured Creditor,
BANK OF AMERICA, N.A.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

|  |  |
|---|---|
| In re: | Case No.: 12-40101-RLE |
|  | Chapter 11 |
| DRAKE ALHAMBRA, LLC, |  |
|  | **Hearing –** |
|  | Date:  January 22, 2013 |
| Debtor. | Time:  1:30 p.m. |
|  | Place:  U.S. BANKRUPTCY COURT |
|  | 1300 Clay Street |
|  | Oakland, CA 94612 |
|  | Courtroom 201 |

## <u>STIPULATION RESOLVING SECURED CREDITOR'S OBJECTIONS AND PROVIDING RELEASE OF ALL CLAIMS AGAINST SECURED CREDITOR</u>

IT IS HEREBY STIPULATED BY AND BETWEEN BANK OF AMERICA, N.A. the

holder of a Class 1 Secured Claim ("Secured Creditor"), through its counsel, MARK T.

DOMEYER, Esq., of the law firm of Miles, Bauer, Bergstrom & Winters, LLP, attorneys of

record for Secured Creditor, and Debtor, DRAKE ALHAMBRA, LLC, through its counsel,

JOAN M. CHIPSER as follows:

///

///

1

1     WHEREAS, the Class 1 Secured Creditor had objected to the Debtor's Chapter 11 Plan

2 filed on October 22, 2012 as docket entry no. 59 (the "Plan") with the objections having been

3 filed on or about November 12, 2012 as docket entry no. 60 (the Objections"); and

4     WHEREAS, the Class 1 Secured Creditor and the Debtor have continued to meet and

5 confer in good faith regarding the resolution of the Objections and certain claims alleged by the

6 Debtor against the Class 1 Secured Creditor;

7     WEHREAS in return for the agreement of the Debtor to provide a release of all claims

8 the Class 1 Secured Creditor hereby stipulates and agrees that its Objections are hereby

9 withdrawn in accordance with Debtor's provision of a full release to the Class 1 Secured

10 Creditor in accordance with California Civil Code Section 1542.

11     NOW, THEREFORE it is:

12     STIPULATED AND AGREED that the Debtor hereby provides a release of all claims

13 the Debtor may have against the Class 1 Secured Creditor; and it is

14     STIPULATED AND AGREED that the Class 1 Secured Creditor's Objections are hereby

15 withdrawn and the Class 1 Secured Creditor accepts the Plan Treatment accorded to it; and it is

16     STIPULATED AND AGREED that upon confirmation of the Plan, Class 1 Secured

17 Creditor will rescind the Notice of Default and Notice of Trustee's Sale recorded against the

18 Debtor's property with respect to Class 1 Secured Creditor's loan; and it is

19     STIPULATED AND AGREED that upon confirmation of the Plan, the parties will

20 execute and record the Memorandum of Loan Modification, a sample of which is attached hereto

21 as **Exhibit "1"**; and it is

22     STIPULATED AND AGREED that the terms of this Stipulation ("Stipulation") are

23 hereby incorporated into the Plan treatment accorded to the Class 1 Secured Creditor and shall

24 comprise a portion of the treatment provided to the Class 1 Secured Creditor and shall be

attached thereto and incorporated therein. The Debtor and the Class 1 Secured Creditor agree

that any terms of the Stipulation that were not included in the Plan shall be incorporated into the

Plan and comprise a portion of the Plan treatment and the Debtor and the Class 1 Secured

Creditor are at variance with the terms of the Plan the terms of the Stipulation shall replace the

inconsistent terms in the Plan; and it is

STIPULATED AND AGREED that this Stipulation shall be binding and effective

despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of

the United States Code.

IT IS SO STIPULATED AND AGREED:

MILES, BAUER, BERGSTROM & WINTERS, LLP

DATED: January 8, 2013

By: _____
Mark T. Domeyer, Esq.
Attorney for Secured Creditor

DATED January 8, 2013

By: _____
Joan M. Chipser, Esq.
Attorney for Debtor

(12-01483/ndmisc.dot/rma)

3

# EXHIBIT ATTACHMENT

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Drake Alhambra, LLC
4100 Redwood Road #311
Oakland, CA 94619

_____ SPACE ABOVE THIS LINE FOR RECORDERS USE _____

## MEMORANDUM OF LOAN MODIFICATION

THIS MEMORANDUM OF LOAN MODIFICATION (this "Memorandum") is effective as of _____ and is made by and between Bank of America, N.A. ("Lender") and Drake Alhambra, LLC ("Borrower").

### RECITALS

A.    On or about December 23, 1998, Bank of America, Federal Savings Bank made a loan (the "Loan") to Borrower evidenced by that certain Adjustable Rate Note dated December 23, 1998 in the original principal amount of $1,120,000 (the "Note"). The Note is secured by a Deed of Trust dated December 23, 1998 and recorded on December 30, 1998 in the Official Records of Riverside County, California as Instrument Number 565172 (the "Deed of Trust"). The Deed of Trust encumbers that certain real property commonly known as 77500 Avenida Fernando, La Quinta, California (the "Property"), as more particularly described in Exhibit A attached hereto. The Note, the Deed of Trust and all other documents securing, evidencing, or pertaining to the Loan shall be referred to collectively hereinafter as the "Loan Documents". Unless otherwise defined herein, all initially capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Loan Documents.

B.    Lender is the current owner and holder of the Loan.

C.    On or about January 5, 2012, Borrower filed a case under Chapter 11 of the United States Bankruptcy Code, Case No. 12-40101, in the United States Bankruptcy Court for the Northern District of California, Oakland Division.

D.    On or about _____, Borrower's Chapter 11 Plan was confirmed by Order of the U.S. Bankruptcy Court dated _____ (hereinafter referred to as the "Confirmed Plan").

1


EXHIBIT

NOW, THEREFOR, based upon the Recitals, which are incorporated herein by this reference, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged. Lender and Borrower agree as follows:

1.    Pursuant to the Confirmed Plan certain terms of the Note and the Deed of Trust have been modified and amended as of the "Effective Date" defined in the Confirmed Plan.

2.    All references in the Loan Documents to the Note, Deed of Trust, or any other Loan Document shall mean such Loan Documents as amended by the Confirmed Plan.

3.    Except as set forth in the Confirmed Plan, the Loan Documents are unamended and unmodified and the terms and provisions of the same are hereby ratified and affirmed.

IN WITNESS WHEREOF, Lender and Borrower have executed this Memorandum as of the date first written above.


LENDER:                                          BORROWER:

By _____          By _____

Name _____          Name _____

Title _____          Title _____

2

EXHIBIT 1

EXHIBIT "A" LEGAL DESCRIPTION

PARCEL A:

THAT PORTION OF THE SOUTHEAST QUARTER OF SECTION 36, TOWNSHIP 5 SOUTH, RANGE 6 EAST, SAN BERNARDINO BASE AND MERIDIAN, AS SHOWN BY GOVERNMENT SURVEYS, DESCRIBED AS FOLLOWS:

COMMENCING AT A POINT ON THE WEST LINE OF SAID SOUTHEAST QUARTER OF SECTION 36, WHICH BEARS NORTH 00° 01' WEST, A DISTANCE OF 1,771.38 FEET FROM THE SOUTH QUARTER CORNER OF SAID SECTION 36, SAID POINT BEING ALSO THE SOUTHEAST CORNER OF A PARCEL OF LAND MARKED "DAVID R. DAVIS", AS SHOWN ON A RECORD(S) OF SURVEY IN BOOK 6 PAGE 25, OF RECORD(S) OF SURVEY, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE NORTH 89° 59' EAST, A DISTANCE OF 355.50 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND TO BE DESCRIBED; THENCE NORTH 00° 01' WEST AND PARALLEL WITH THE WESTERLY LINE OF SAID SOUTHEAST QUARTER OF SECTION 36, A DISTANCE OF 472.58 FEET; THENCE NORTH 68° 28' EAST, A DISTANCE OF 4.52 FEET; THENCE NORTH 78° 53' EAST, A DISTANCE OF 64.87 FEET; THENCE SOUTH 78° 01' EAST, A DISTANCE OF 85 FEET; THENCE SOUTH 00°01' EAST AND PARALLEL WITH THE WESTERLY LINE OF SAID SOUTHEAST QUARTER OF SECTION 36, A DISTANCE OF 469.19 FEET; THENCE SOUTH 89°59' WEST, A DISTANCE OF 151.00 FEET TO THE POINT OF BEGINNING.

PARCEL B:

REAL PROPERTY SITUATED IN THE COUNTY OF RIVERSIDE, AND DESCRIBED AS FOLLOWS: IN CITROUS PEST CONTROL DISTRICT NO. 1, COUNTY OF RIVERSIDE, AND DESCRIBED AS FOLLOWS:

ALL THAT PORTION OF THE NORTHWEST QUARTER OF SOUTHEAST QUARTER OF FRACTIONAL SECTION 36, TOWNSHIP 5 SOUTH, RANGE 6 EAST, SAN BERNARDINO BASE AND MERIDIAN, AS SHOWN BY UNITED STATES GOVERNMENT SURVEY, PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WEST LINE OF NORTHWEST QUARTER OF SOUTHEAST QUARTER OF SAID SECTION WHICH BEARS NORTH 00° 01' WEST, A DISTANCE OF 1,771.38 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SAID SECTION 36; THENCE CONTINUING NORTH 00° 01' WEST ALONG THE WEST LINE OF SAID NORTHWEST QUARTER OF SOUTHEAST QUARTER, 639.13 FEET; THENCE SOUTH 62° 03'30"EAST, 100.53 FEET;

THENCE SOUTH 39° 10' EAST, 203.52 FEET; THENCE NORTH 68° 28' EAST, 148.53 FEET; THENCE SOUTH 00° 01' EAST AND PARALLEL WITH THE WEST LINE OF SAID SOUTHEAST QUARTER, 488.7 FEET; THENCE SOUTH 89°59' WEST, 355.5 FEET TO THE POINT OF BEGINNING;

SAID PROPERTY IS ALSO SHOWN ON RECORD(S) OF SURVEY ON FILE IN BOOK 7 PAGE 2, OF RECORD(S) OF SURVEY, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

EXHIBIT "A" CONTINUED

PARCEL C:

THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER
OF SECTION 36, TOWNSHIP 5 SOUTH, RANGE 6 EAST, SAN BERNARDINO
BASE AND MERIDIAN, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY LINE OF THE SOUTHEAST
QUARTER OF SAID SECTION 36, WHICH BEARS NORTH 00° 01' WEST
2,410.51 FEET FROM THE SOUTH QUARTER CORNER OF SAID SECTION 36,
SAID POINT ALSO BEING THE MOST NORTHERLY CORNER OF THAT CERTAIN
PARCEL OF LAND CONVEYED TO THE MIL DIAMOND COMPANY BY DEED
RECORDED JUNE 8, 1948 IN BOOK 912 PAGE 590 OF OFFICIAL RECORDS
OF RIVERSIDE COUNTY, CALIFORNIA; THENCE NORTH 00° 01' WEST ON THE
WESTERLY LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 228.75
FEET TO THE NORTHWEST CORNER THEREOF; THENCE NORTH 89° 56'
EAST, ON THE NORTHERLY LINE OF THE SOUTHEAST QUARTER OF SAID
SECTION, 506.50 FEET; THENCE SOUTH 00° 01' EAST, PARALLEL WITH
THE WESTERLY LINE OF THE SOUTHEAST QUARTER OF SAID SECTION,
399.30 FEET, TO THE NORTHEAST CORNER OF THAT CERTAIN PARCEL OF
LAND CONVEYED TO CARL M. LOEB, JR., BY DEED RECORDED MAY 2,
1952 AS INSTRUMENT NO. 18825 OF OFFICIAL RECORDS; THENCE NORTH
78°01' WEST 85 FEET; THENCE SOUTH 78° 53' WEST 64.87 FEET; THENCE
SOUTH 68° 28' WEST 4.52 FEET, TO A POINT ON THE EASTERLY LINE OF
SAID PARCEL OF LAND CONVEYED TO THE MIL DIAMOND COMPANY, SAID
POINT BEARS NORTH 00° 01' WEST 472.58 FEET FROM THE SOUTHEAST
CORNER THEREOF; THE PRECEDING THREE COURSES AND DISTANCES ARE
ON THE NORTHERLY LINE OF SAID PARCEL OF LAND CONVEYED TO CARL
M. LOEB, JR.; THENCE NORTH 00° 01' WEST, ON THE EASTERLY LINE OF
SAID PARCEL OF LAND CONVEYED TO MIL DIAMOND COMPANY, 16.12
FEET, TO THE NORTHEAST CORNER THEREOF; THENCE SOUTH 68° 28' WEST
148.53 FEET; THENCE NORTH 39° 10' WEST 203.52 FEET; THENCE NORTH
62° 03'30" WEST 100.58 FEET, TO THE POINT OF BEGINNING; THE
PRECEDING THREE COURSES AND DISTANCES ARE ON THE NORTHERLY LINE
OF SAID PARCEL OF LAND CONVEYED TO MIL DIAMOND COMPANY.

page 2 of 2